**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

TOWN OF ANTONITO, COLORADO, a municipal corporation

    Plaintiff,

v.

NAVISTAR, INC., a Delaware corporation; and BIG TRUCK RENTAL, LLC, a Florida limited liability company

    Defendants.

_____

**COMPLAINT**
_____

Plaintiff, by and through its attorneys hereby files this *Complaint* against Defendants and states the following:

**INTRODUCTION**

1.    Plaintiff purchased a 2013 International Model 7400 rear loading garbage truck ("Model 7400") from Defendant Big Truck Rental, LLC, that Plaintiff subsequently learned was equipped with a defective engine manufactured by Defendant Navistar, Inc. Defendants failed to disclose, negligently failed to disclose, and actively concealed a known defective emissions system designed and incorporated into the Navistar Maxxforce Engine that was known or should have been known to Defendants at the time Plaintiff purchased the Model 7400.

2.    This action is brought pursuant to Colorado Consumer Protection Act (C.R.S §6-1-101 *et seq.*), and State of Colorado common law claims of

negligent misrepresentation, product liability, breach of warranty, and contract.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) as the amount in controversy exceeds $75,000 and there is a complete diversity of citizenship between Plaintiff and Defendants, and the case involves a federal question pursuant to 28 U.S.C. § 1331.

## PARTIES

4. Plaintiff is a Colorado municipal corporation located in Antonito, Colorado.

5. Defendant Navistar, Inc. is a Delaware corporation with its principal place of business in Illinois.

6. Defendant Big Truck Rental, LLC, is Florida limited liability company with its principal place of business in Florida.

## FACTUAL BACKGROUND AND ALLEGATIONS

7. Plaintiff operates a municipal refuse removal service, and on or about January 12, 2016, exercised a lease purchase option and bought the Model 7400 rear loading garbage truck from Defendant Big Truck Rental, LLC for $100,000.

8. In May 2017, the Model 7400 broke down and Plaintiff's mechanic informed Plaintiff that the Model 7400 had utilized a technology known as

exhaust gas recirculation ("EGR") to reduce emissions, and that the Navistar Maxxforce engines with EGR technology were known to be defective, as he has repaired numerous Maxxforce engines with the same problem.

9. On January 18, 2001, the U.S. Environmental Protection Agency ("EPA") announced new emissions standards to be imposed on heavy-duty diesel engines, including Plaintiff's Navistar Maxxforce engine at issue in this case.

10. The implementation of the rules was phased in and eventually delayed until 2010 and became known as the "EPA10 Emissions Standards".

11. The EPA10 Emission Standards were promulgated in 2001 to provide engine manufacturers lead time necessary for compliance.

12. The EPA10 Emission Standards set numerous standards for emission controls including the expectation that the exhaust system is reliable and that the emission control technologies must continue to function as required under all operating conditions for the useful life of the vehicle.

13. The EPA10 Emission Standards were promulgated pursuant to the Clean Air Act, 42 U.S.C. § 7521, which provides the framework for the regulation of emissions for motor vehicles and engines operated in the United States.

14. Specifically, Section 7521(m) of the Clean Air Act provides for regulations regarding the use of emission control diagnostics capable of accurately identifying emission system deterioration or malfunction.

15. Section 7541(a)(1) of the Clean Air Act requires that each manufacturer warrant to the ultimate purchaser that such vehicle or engine is

designed, built, and equipped to conform to all applicable regulations, and be free of defects in material and workmanship that would cause a vehicle or engine to fail to conform with the applicable regulations for its useful life.

16.     EPA10 Emission Standards regulated both diesel vehicle engine emissions and diesel fuel standards simultaneously and set not exceed standards for Oxides of Nitrogen ("NOx"); Non-methane Hydrocarbons ("NMHC"), Non-methane Hydrocarbon Equivalent; Carbon Monoxide; and Particulate Matter ("PM").

17.     Most commercial truck manufacturers chose to use a technology known as Selective Catalytic Reduction ("SCR") in the exhaust systems to meet the new emission regulations. Defendant Navistar, however, chose the Exhaust Gas Recirculation ("EGR") technology to comply with the EPA10 Emission Standards.

18.     EGR was promoted by Defendant Navistar as reducing NOx emissions by recapturing the initial exhaust gas, and then cooling it and blending it with fresh air before returning it back the engine cylinder to be burned again.

19.     At that same time that Defendant Navistar was promoting it EGR technology, it was criticizing the SCR technology adopted by its competitors.

20.     As early as 2004 Navistar knew its EGR technology was flawed when Navistar's 6.0-liter diesel engines were used in various Ford vehicles for which Ford faced an unprecedented number of complaints, leading Ford to bring a suit against Navistar for the defective engines.

21.     Navistar also produced a 6.4-liter engine for Ford that had similar

problems, and in 2010 after numerous problems with Navistar's EGR technology, Ford began producing its own diesel engines using SCR technology.

22. Plaintiff's Model 7400 is a 7.4-liter Maxxforce engine that utilizes the same EGR technology that is plagues all of Navistar's heavy-duty diesel truck engines that utilize EGR technology.

23. Navistar knew the EGR technology was defective but nonetheless failed to disclose the problems the Maxxforce engines.

24. The defective EGR system causes engine failure well before the engine's useful life cycle.

25. The EGR system was defective when manufactured and causes the Maxxforce engine to not function as required and represented, on a consistent and reliable basis.

26. Despite the numerous and apparent defects with the EGR technology Navistar continued to utilize the EGR technology in its Maxxforce diesel engines.

27. By 2010, when the NOx standard went into effect, Navistar had been unable to certify its EGR engines could meet with NOx standard but continued selling the engines under an agreement with EPA that allowed it to use emission credits that Navistar had previously accumulated as well as pay a penalty.

28. Navistar knew or should have known that the EGR system would not meet the EPA10 Emission Standards and used credits and penalty payments to forestall engine decertification.

29. In 2012, Navistar abandoned in EGR technology after years of attempting to cover up the truth regarding this technology, and its inability to conform to EPA10 Emission Standards.

30. In 2016, the United States Securities and Exchange Commission filed a suit against Daniel Ustain, who was the President and CEO of Navistar from 2010 to 2012. The SEC alleged that Mr. Ustain guided Navistar through campaign of fraud and deception wherein he represented to the public that Navistar and its EGR technology was meeting EPA10 Emission Standards, when in fact it was not. *See U.S. SEC v. Ustian, 1:16-cv-3885 in US Dist. Court for Norther District of Illinois.*

31. Defendant Big Truck Rental, LLC operates a nationwide network of truck rental and sales operations and specializes in refuse disposal trucks.

32. Upon information and belief Defendant Big Truck Rental, LLC handled numerous warranty claims and service claims related to the EGR technology in Navistar's Maxxforce engines prior to Plaintiff's purchase.

33. Upon information and belief Defendant Big Truck Rental, LLC was aware of the problems with the EGR technology prior to Plaintiff's purchase.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract – Defendant Big Truck Rental)

34. All the averments in this Complaint are incorporated herein as if set forth in full here.

35. All contracts in Colorado have an implied covenant of good faith

and fair dealing.

36. Defendant Big Truck Rental specializes in renting refuse trucks across North America and holds itself on its website (www.bigtruckrental.com) as being led by "some of the smartest, most experienced in the business."

37. Defendant Big Truck Rental was, upon information and belief, aware of the problems with the EGR technology in the Navistar Maxxforce engines when it sold the Model 7400 to Plaintiff.

38. Defendant Big Truck Rental had an obligation under the covenant of good faith and fair dealing to disclose those problems to Plaintiff.

39. Defendant Big Truck Rental failed to make known to Plaintiff the problems that it was aware of with the EGR technology Navistar Maxxforce engines.

40. Defendant Big Truck Rental's breach of the covenant of good faith and fair dealing caused damages to Plaintiff in an amount to be shown at trial.

**SECOND CLAIM FOR RELIEF**
(Negligent Misrepresentation – All Defendants)

41. All the averments in this Complaint are incorporated herein as if set forth in full here.

42. Defendant Navistar, Inc. manufactured, distributed, and sold the Maxxforce 7.6-liter engine in Plaintiff's Model 7400 truck.

43. Defendants Big Truck Rental knew or should have known that the Maxxforce 7.6-liter engine utilized defective EGR engine exhaust technology.

44. Defendants failed to disclose the known defect to Plaintiff.

45. Defendants owed a duty of care to Plaintiff to communicate information regarding the Maxxforce engine's defective EGR system to Plaintiff.

46. Plaintiff first discovered the defect in May 2017 after the first problem with the EGR system arose and Plaintiff's mechanic informed Plaintiff of the Maxxforce diesel engine EGR problem.

47. Defendant Big Truck Rental was negligent in not communicating the EGR defect to Plaintiff.

48. Defendant Big Truck Rental failed to make Plaintiff aware of the known EGR product defect knowing that the Plaintiff would act or decide to not act based upon Defendant Big Truck Rental's omission of its knowledge of the EGR engine defect.

49. Plaintiff reasonably relied on Defendants' misrepresentation regarding the EGR engine defect.

50. Plaintiff's reliance on Defendants' misrepresentation of known material defects caused Plaintiff damages in an amount to be proved at trial.

### **THIRD CLAIM FOR RELIEF**
(Colorado Consumer Protection Act – All Defendants)

51. All the averments in this Complaint are incorporated herein as if set forth in full here.

52. Defendants engaged in a deceptive trade practice by knowingly, negligently selling a defective engine.

53. The deceptive trade practice occurred in the course of Defendants' business.

54. The deceptive trade practice significantly affected the public as actual or potential consumers of Defendants' defective products and sales services.

55. Plaintiff was an actual consumer of Defendants and suffered damages as a result.

56. The deceptive trade practice caused Plaintiffs' damages.

## **FOURTH CLAIM FOR RELIEF**
(Breach of Warranty - Navistar)

57. All the averments in this Complaint are incorporated herein as if set forth in full here.

58. The Clean Air Act requires to Navistar to warrant to Plaintiff that it installed an emissions regulations system that conforms to all applicable laws and regulations and is good for the useful life of the vehicle.

59. Defendant Navistar breached this warranty.

60. Plaintiff has suffered damages as a result.

## **FIFTH CLAIM FOR RELIEF**
(Product Liability - Negligence & Strict Product Liability– All Defendants)

61. All the averments in this Complaint are incorporated herein as if set forth in full here.

62. Defendant Big Truck Rental sold the Model 7400 while engaged in the business of selling the product for use by Plaintiff.

63. Defendant Navistar designed, manufactured and sold the engine in the Model 7400 with a defective EGR system.

64. The Model 7400 contained a defective engine when it manufactured and sold by Defendants.

65. Defendant Navistar had a duty to Plaintiff to test, design, and manufacture and engine that complied with EPA 10 Emission Standards, and Defendant also had a duty to warn Plaintiff of the known risks and defects with its Maxxforce Engines.

66. Defendant Navistar was negligent by failing to exercise reasonable care in the design of an engine that complied with the EPA 10 emission standards and breached its duty to Plaintiff.

67. Defendant Big Truck Rental owed a duty to Plaintiff to warn Plaintiff of the known risks and defects with the Maxxforce engine that was installed in the Model 7400.

68. Defendant Big Truck Rental was negligent by selling the Model 7400 with an engine that it knew or should have known was defective and failing to warn Plaintiff of the known risks and defects.

69. Defendants misrepresented to Plaintiff, and other potential purchasers, material facts about the Model 7400 to public about the quality and character of the product: namely that the Model 7400 contained a known defective engine and that fact was concealed from Plaintiff.

70. Plaintiff reasonably relied on Defendants' misrepresentation about the Model 7400.

71. As a result of Defendants' negligence, Plaintiff has suffered damages including but not limited to, such as cost of repair already incurred as

well as that likely to occur in the future, downtime of the Model 7400, and diminution in value.

**WHEREFORE**, Plaintiff respectfully requests the Court grant the following relief:

1. Such actual damages as the Court may deem just and appropriate, including treble damages pursuant to the Colorado Consumer Protection Act;

2. Alternatively, and if appropriate, rescission of the purchase contract;

3. Reasonable attorneys' fees in accordance with Colorado law;

4. Expert witness fees;

5. Pre-judgment and post-judgment interest on any award of damages to the extent permitted by law;

6. That Defendants be jointly and severally liable for all damages and costs; and

7. Such other and further relief as the Court deems just and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL CLAIMS SO TRIABLE.**

DATED December 7, 2018.

    Respectfully Submitted,
    **SAN LUIS VALLEY LAW FIRM**

    /s/ Matthew K. Hobbs
    Matthew K. Hobbs
    101 Chico Ct., Ste. A
    Monte Vista, CO   81144

    Mail Address:
    P.O. Box 609

Salida, CO 81201  
Telephone: (719) 852-0627  
Email:[matt@slv-law.com](mailto:matt@slv-law.com)  
Attorney for Plaintiff Town of Antonito